1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD D. SAVIDGE,

11              Petitioner,              No. CIV-S-05-0335 LKK KJM P

12       vs.

13   STUART J. RYAN,                     ORDER AND

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a California prisoner proceeding pro se with an application for writ of

17   habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges convictions for various sex

18   offenses committed against one of his daughters, which were entered in the Superior Court of

19   Sacramento County.  Petitioner is serving a total sentence of 62-years-to-life imprisonment.

20   Resp't's May 5, 2008 Lodged Doc. #1 at 2; CT 138-141.

21   I.  Preliminary Matters

22          Before proceeding to the merits of petitioner's claims, the court address three

23   preliminary matters.  First, petitioner requests that the court hold an evidentiary hearing.

24   Petitioner does not automatically have the right to a hearing; rather the court may grant a request

25   upon a showing of good cause.  Because the court finds there is not good cause for a hearing, this

26   /////

1

1   request will be denied.  Rule 8, Rules Governing Section 2254 Cases in the United States District

2   Courts.

3          Second, on April 28, 2008 and May 9, 2008, petitioner requested that the court

4   consider additional arguments in support of his habeas petition.  Respondent submitted no

5   opposition to these requests.  Good cause appearing, petitioner's requests will be granted and the

6   court will consider the information provided on April 28, 2008 and May 9, 2008 in addressing

7   the arguments identified herein.

8          Finally, respondent has asked permission for maintaining the redaction of the

9   names of jurors and potential jurors from a document respondent filed on May 2, 2008.  Good

10  cause appearing, respondent's request will be granted.

11  I.  Standard For Habeas Corpus Relief

12         An application for a writ of habeas corpus by a person in custody under a

13  judgment of a state court can be granted only for violations of the Constitution or laws of the

14  United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any

15  claim decided on the merits in state court proceedings unless the state court's adjudication of the

16  claim:

17              (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established federal law, as
18              determined by the Supreme Court of the United States; or

19              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
20              State court proceeding.

21  28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1]  It is the habeas

22  petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See

23  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

24  /////

25  _____

26       [1]  Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not
     grounds for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 118-19 (2007).

2

1    The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

2    different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from
> our decisions but unreasonably applies it to the facts of the
> particular case.  The focus of the latter inquiry is on whether the
> state court's application of clearly established federal law is
> objectively unreasonable, and we stressed in Williams [v. Taylor,
> 529 U.S. 362 (2000)] that an unreasonable application is different
> from an incorrect one.

10   Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

11   law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

12   fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

13   (2002).

14   The court will look to the last reasoned state court decision in determining

15   whether the law applied to a particular claim by the state courts was contrary to the law set forth

16   in the cases of the United States Supreme Court or whether an unreasonable application of such

17   law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

18   919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

19   of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

20   must perform an independent review of the record to ascertain whether the state court decision

21   was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

22   words, the court assumes the state court applied the correct law, and analyzes whether the

23   decision of the state court was based on an objectively unreasonable application of that law.

24   "Clearly established" federal law is that determined by the Supreme Court.

25   Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to

26   look to lower federal court decisions as persuasive authority in determining what law has been

1  "clearly established" and the reasonableness of a particular application of that law. Duhaime v.

2  Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003),

3  overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); Casey v. Moore, 386 F.3d

4  896, 907 (9th Cir. 2004) ("lower federal court and state court precedent may be relevant when

5  that precedent illuminates the application of clearly established federal law"); cf. Arredondo, 365

6  F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of

7  Supreme Court precedent is misplaced).

8  II. Background

9         Petitioner was convicted in a retrial after the jury in his first trial was unable to

10  reach a verdict. See Clerk's Transcript of First Trial (CT I) 133.[2]  Following conviction and

11  sentencing, petitioner filed a direct appeal in the California Court of Appeal, Third Appellate

12  District (Court of Appeal).  The Court of Appeal summarized the facts surrounding petitioner's

13  conviction as follows:

14         There is no purpose in an extensive account of the lurid facts
           supporting the convictions.  It is sufficient to note that the trial was
15         a credibility contest between the victim (who was born in 1988 and
           was nearly 13 at the time of the trial) and the testifying defendant.
16         She described a pattern of "over a thousand" molestations
           beginning just before kindergarten in 1993 and continuing until
17         New Year's Eve in 1999, with the various counts being
           specific–and often graphic–illustrations of the types of conduct
18         (essentially fellatio and touchings with his hands and penis without
           any penetration).  She concealed this activity because the defendant
19         told her something bad would happen to him if she told anyone.
           She finally told a social worker on January 19, 2000, about the
20         molestations.  The social worker summoned a police officer, who
           took the victim's statement.
21
           There was evidence of possible bias on the part of both the victim
22         and her mother.  During her interview with the social worker, the
           victim expressed a desire to live under her mother's care because
23         she thought her father was too restrictive.  When she found out that
           rather than her mother coming to live with her, it meant living with
24         her mother under more meager economic circumstances than she

25  _____

26         [2]  The pages of this Clerk's transcript as lodged with the court are not organized in
    numerical order.

4

had enjoyed at home, she cried.  During another pretrial interview, the victim expressed her dislike of the possibility that the defendant might marry a younger woman from Peru who was a coworker's cousin with whom he had been corresponding; her report of the molestations occurred shortly after the defendant returned from visiting the potential bride.

The victim's mother was the defendant's first wife, from whom he separated in 1990 because of her adultery.  Their divorce was acrimonious, with defendant obtaining custody of the children and living with his former parents-in-law for a time.  She resented what she saw as the defendant's second wife usurping her role as mother to their children, and admittedly tried to make the life of defendant and his wife miserable (which led to in part the break up of his second marriage).  She became livid when her children told her their father went to Peru to meet a potential bride, cursing at the defendant during a heated phone call on his return.

There was evidence that the victim had access to a book for adolescents on human sexuality.  There was no corroborating physical evidence on molestation, which is common when there is no penetration.  The victim's younger sister recalled an incident when the victim came running from the defendant's bedroom (the door to which had been shut) to the bathroom; she was crying and her pants and underwear were pulled down to her knees.[Fn1] However, while the victim claimed that her sister had witnessed the defendant in an act of interfemoral intercourse with the victim, her sister denied ever seeing the defendant molest the victim.  The victim's cousin (born in 1983) testified that the victim had complained to her around 1995 about the defendant's molestations. When the cousin told their grandmother, she refused to believe it. The cousin asked the victim a couple of years later whether the molestations were still happening; the victim said no.[Fn2]  She first gave a statement about this in August 2000 when the prosecution contacted her.

There were inconsistencies in the victim's account over the course of these proceedings, which the defendant highlights on appeal.[Fn3]

In the previous trial, the victim had described a face-to-face incident of interfemoral intercourse in which she refused to say words of encouragement at the direction of the defendant.  In her pretrial interview and on retrial (which was the basis for count thirteen), she testified the defendant was behind her and she had acceded to his demand for words of encouragement.

In the previous trial, the victim testified that the defendant's erection pointed downward.  On retrial, she testified it pointed upward (which the defendant's second wife confirmed was its normal state when erect).

Finally, her testimony regarding some of the circumstances of the molestations on New Year's Eve 1999 deviated significantly from any previous testimony, as even the prosecutor conceded in his closing. The prosecutor attributed this to her being tired and getting confused.

The defendant generally denied committing any of the acts to which the victim testified, and attempted to contradict specifics of the victim's testimony. He pointed out that as an airline employee, he could have flown almost anywhere in the world at little cost after the accusation.

He also called other witnesses to contradict certain of the victim's facts. She had described uncharged acts (occurring out of state) on a sofa bed at her paternal grandparents' home, but they denied ever owning a sofa bed. In connection with one of the counts on which the jury failed to reach a verdict (count eleven), she described an act of fondling that occurred in the front seat of a Camry on the way to the Oakbrook school during the three months in the fall of 1998 that she attended it. The defendant's brother testified that defendant did not purchase the Camry until April 1999; he was sure of the date because defendant later sold the car to his brother and he had the sales documents. In connection with another count on which the jury could not reach a verdict (count twelve), she described the defendant picking her up at the Oakbrook school on that same day. Her sister had gone home earlier. He drove with the victim to his brother's house nearby, where the defendant took her into a trailer in the driveway and molested her. The defendant's brother testified that the defendant did not have a key to the trailer.

During the fall of 1998, he was remodeling it before selling it to his father. The interior was torn up and nearly impassable.

Various witnesses testified to the defendant's good character and the absence of any indication that molestations were occurring. These included coworkers, his brother, his parents (who lived with him in the mid-1990's), and his second wife (who also testified that the defendant had a normal sexual relationship with her on his two days off each week).

---

[Fn1]  The sister had not mentioned this in her initial interview with the social worker after leaving the defendant's home, but remembered it during a pretrial interview.

[Fn2]  The victim recalled telling her cousin when she was in kindergarten, the year after the molestations began (i.e., about 1994). She believed someone told the defendant, because the next

day he was really angry and instructed her never to tell anyone again what they did.   About four years later, when her cousin asked her if it was still occurring, she denied it because she was afraid what might happen.

[Fn3]   As we do not agree that there is a significant difference between her account to the social worker and later accounts of the degree to which the defendant may have penetrated her vagina with any part of his body, we will not relate the claim.

Resp't's September 21, 2005 Lodged Doc. #3 (Op.) at 2-7.

With respect to most of petitioner's claims, the Court of Appeal was the only or last court to issue a reasoned opinion on direct review.

III.  Arguments And Analysis

A.  Prosecutorial Misconduct In Closing Argument ("Ground 1")

In his first claim, petitioner alleges that certain arguments made by the prosecutor, that petitioner's decision to contact an attorney demonstrated consciousness of guilt, violated his Constitutional rights, and in particular his Fifth, Sixth and Fourteenth Amendment rights, and the error affected the jury's decision. Mem. P.&A. in Supp. Pet. (Pet.) at. 4-10.  Respondent contends that the state courts properly concluded that any error was harmless.  Answer at 8-11.

The prosecutor's challenged comments began during his closing argument, when he invited the jury to infer guilt from a number of actions taken by petitioner upon learning of his daughter's accusations, including calling an attorney:

And then Mr. Savidge finds out that [his daughter] is accusing him of child molest and he cries.  Is that the proper emotion a man would have if he raised his daughter and there was nothing but a loving, caring relationship and no molest going on?  And you hear there's an accusation [of] molest you think you're going to start crying?

I tell you what, my daughter, your daughter, any daughter of a parent that just makes up these accusations out of the blue, you don't cry.  You're mad.  You're saying what in the hell is going on here.  I need to talk to her.  Or if I can't talk to her I need someone else to say hey, what's up with this.  What is going on.  And it will all be cleared up because, you know, she's my daughter and she loves me and this hasn't been going on and it will all be cleared up.

Did he do that?  No.  He basically threw in the towel.  He threw in the towel.  He dutifully does what [the] social worker tells him to do and he calls his attorney.  Does that sound like an innocent man to you?  He gives over all the documentation.  No, if that's me, anyone accused, no way.  I'm not giving you anything, I'm getting to the bottom of this.

The thing about oh, isn't that a responsible thing for him to do, just hand over the documentation for the kids to Mom because she's now the person providing custody and support?  Yeah.  In a vacuum maybe.  But you know what, when you're accused of this crime, you don't just do that.  You fight.  You fight it with everything you have.

[His ex-wife] races to Sacramento and she talks to the defendant and says well, you don't have anything to worry about, right?  And he says nothing because he knew that it was true.  He says nothing.  You may consider that in determining this man's guilt.  Is that the reaction of an innocent man?

RT 1393:17-1394:23.  Defense counsel did not object, but addressed the argument to an extent in his own closing, arguing that the prosecutor's suggestion "that there is a . . . proper way to respond [to the allegations], a not guilty way of responding, is utter nonsense."  RT 1448:18-20. Defense counsel specifically addressed the prosecutor's implication that an innocent man would not remain silent and would not cry, but did not expressly counter the implication that an innocent man would not contact an attorney.  RT 1449-1450.  He urged a competing inference of innocence because petitioner had chosen to stand trial, when, as an airline employee, he could easily have fled the country.  Id.

The prosecutor again highlighted, repeatedly -- five more times in rapid succession -- petitioner's decision to retain counsel in his rebuttal to defense counsel's closing argument:

[His ex-wife] says you don't have anything to hide, do you – or anything to worry about, do you.  And he walks away.  No answer. Instead he calls his lawyer.  That's one of the first things he does is call his lawyer.  Because he knows he's going down and he needs help.  It's been disclosed.  He knows it now.  He calls his lawyer.

> He doesn't say – I mean, if you're innocent you say I don't need a lawyer, let's just figure this out, my daughter is my loving, caring – I'm a loving, caring dad, I have a wonderful relationship with my daughter, he'd have you believe, so let's just figure this out.  I don't need a lawyer.  If I can't talk to her, [ex-wife], you go talk to her, figure it out.  This is just a mistake.  This is silly.  If you're truly innocent that's the way you're going to react.  You're not going to start bawling.  Give me a break.
>
> So he calls his lawyer and he packs a bunch of clothes for the girls because he knows he's not getting them back.  He knows what he did.  And he's acting like he knows what he did.

RT 1499:16-1500:6.

On appeal, petitioner argued that the prosecutor's closing arguments were improper.  The Court of Appeal concluded that the prosecutor's statements regarding petitioner's demeanor and submission to lawful authority were not improper.  Op. at 26.  The appellate panel was divided regarding the argument based on petitioner's decision to call a lawyer.  It found unanimously that the comments were improper but held in a split decision that the error was harmless.  Id., majority op. at 26-28; Id., dissenting op. at 1-7.  The majority reasoned:

> The assertions that the innocent do not need to consult an attorney cause us greater concern.  If this was simply an errant inference, we would treat it no differently than the [other claims of improper prosecutorial argument].  The prosecutor's argument, however, amounted to urging the jury to draw an adverse inference from the defendant's desire to speak to an attorney.  This is prohibited as a penalty on the exercise of a constitutional right.  (People v. Schindler (1980) 114 Cal.App.3d 178, 187-89, and cases cited therein; cf. People v. Guzman (1988) 45 Cal.3d 915, 947 [adverse comment on invocation of right to testify would be impermissible]). [footnote omitted]
>
> Although defense counsel may have believed it was better to rely on his own argument about the stupidity of the prosecutor's beliefs in "normal" responses to accusations of molestation, which might be a rational tactical basis for failing to object and thus waives the issue on appeal, we will address the issue on the merits because we believe that the error was harmless beyond a reasonable doubt.  As we have quoted above, defense counsel strongly refuted the claim that the defendant's conduct evinced a consciousness of guilt.  We also do not think a reasonable juror would believe that calling a lawyer when accused of molestation is a sign of guilt.  Most importantly, the jury did not convict the defendant on all charges.

> There was not any significant difference between the evidence refuting counts eleven or twelve compared with the other counts on which the jury reached verdicts. As for count nine, it described rubbing conduct (similar to what happened in count twelve in the trailer) that interrupted the victim's teeth-brushing. As with most of the counts the jury sustained, the sole contrary evidence was the defendant's general denial. If the jury indeed was biased against the defendant as a result of the prosecutor's misconduct, it would have reached verdicts on these counts as well. While we strongly admonish the prosecutor never to rely on this improper argument again, we cannot find any prejudice to the defendant in the present case.

Id., majority op. at 26-28. The dissenting justice disagreed, noting the closeness of the case

against petitioner, evidenced in part by the hung jury in the first trial, and the prosecutor's

consequent need to try "to convince jurors in the second trial to believe the daughter's

accusations and to disbelieve defendant's protestations of innocence." Id., dissenting op. at 1.

According to the dissent:

> Common sense dictates that, in a close case, such argument can be devastating to a defendant. Indeed, why else would the prosecutor have resorted to it in this case? In fact, courts have long observed that impermissible argument like the prosecutor's in this case is highly prejudicial because it has the capacity to raise in the jurors' minds the inference that the defendant was, or at least believed himself to be, guilty – an inference that might certainly tend to cause the jury to disbelieve the defendant's version of the story.
>
> Contrary to the majority's suggestion, the fact the jury was unable to reach a verdict on some of the charges fails to indicate that the defendant was not prejudiced by the prosecutor's misconduct. There is a more persuasive reason for the deadlock on those charges.
>
> With respect to count eleven, there was evidence from a source *other than defendant* that, at the time of the alleged molestation, defendant did not own the car in which his daughter said that the molestation occurred. As for count twelve, alleged to have occurred in a trailer, there was evidence from a source *other than defendant* that the interior of the trailer lacked room for such activity because it was in the midst of a remodeling project. Count nine was interrelated with count twelve because the daughter testified defendant did the same thing to her in the bathroom that he had done to her in the trailer.

10

> Thus, where there was testimony from someone other than defendant that detracted from his daughter's allegations, some of the jurors discounted her story.  Otherwise, the jury resolved the "she said, he said" credibility contest in her favor and against defendant.

Id., dissenting op. at 4-5 (emphasis in original).

       1.  <u>Applicable Law</u>

       The Sixth Amendment of the Constitution provides that "the accused shall . . . have the Assistance of Counsel for his defence."  U.S. Const., amend. VI.  As determined by the U.S. Supreme Court, it is clearly established federal law that a prosecutor's comment on another core Constitutional right – a defendant's exercise of his Fifth Amendment right not to testify – violates the Fifth Amendment of the Constitution as applied to the states by the Fourteenth Amendment.  <u>Griffin v. California</u>, 380 U.S. 609, 614 (1965).  In <u>Griffin</u>, a case on direct appeal, the defendant was accused of first-degree murder.  <u>Id.</u> at 609.  The evidence presented at trial indicated that the defendant had been seen with the victim the night of her death, in the alley where her body was found.  <u>Id.</u> at 610.  In his argument to the jury, the prosecutor emphasized that, based on that evidence, the defendant would have specific information about the circumstances of the crime but had not taken the stand to relay that information to the jury:

> The defendant certainly knows whether [victim] Essie Mae had this beat up appearance at the time he left her apartment and went down the alley with her.
>
> What kind of a man is it that would want to have sex with a woman that beat up if she was beat up at the time he left?
>
> He would know that.  He would know how she got down the alley.  He would know how the blood got on the bottom of the concrete steps.  He would know how long he was with her in that box.  He would know how her wig got off.  He would know whether he beat her or mistreated her.  He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman.
>
> These things he has not seen fit to take the stand and deny or explain.

> And in the whole world, if anybody would know, this defendant would know.
>
> Essie Mae is dead, she can't tell you her side of the story. The defendant won't.

Id. at 610-11 (internal quotation marks omitted). The Court held that this argument was prohibited by the Fifth Amendment as applied to the states by the Fourteenth Amendment, because it acted as "a penalty by the courts for exercising a constitutional privilege. It cut[] down on the privilege by making its assertion costly." Id. at 614-15 & n.5.

The Supreme Court also has established that a prosecutor's use for impeachment purposes of a defendant's exercise of his Fifth Amendment right to remain silent at the time of arrest and after receiving Miranda[3] warnings is a violation of the Fourteenth Amendment's Due Process clause. Doyle v. Ohio, 426 U.S. 610, 619 (1976). In Doyle, two consolidated cases on direct appeal, the prosecutor's improper questioning asked each petitioner at his respective trial why he had not told the arresting agent the story each testified to at trial, about being framed by a third party. Id. at 613-14.

The Supreme Court further has opined that principles established as generalized standards, rather than bright line rules, are clearly established law even in a new factual context if they are designed to apply to fact-specific scenarios on a case-by-case basis. Panetti v. Quarterman, 551 U.S. 930, 953 (2007). See also Williams v. Taylor, 529 U.S. 362, 382 (2000).

A number of circuit courts, other than the Ninth Circuit, have found the principles established in Griffin to extend to a prosecutor's comment on a person's right to counsel. The Third Circuit, in United States ex rel. Macon v. Yeager, 476 F.2d 613, 615 (3rd Cir. 1973), considered on habeas whether a murder conviction was obtained in violation of the Sixth Amendment as applied to the states by the Fourteenth Amendment, where the prosecutor argued in closing that defendant's retaining counsel, among other things, was inconsistent with his claim

---

[3] Miranda v. Arizona, 384 U.S. 436, 467-73 (1966).

of innocence.  In applying <u>Griffin</u>, the court in <u>Macon</u> found that "<u>Griffin</u> holds broadly that, at least in the criminal context, the relevant question is whether the particular <u>defendant</u> has been <u>harmed</u> by the state's use of the fact that he engaged in constitutionally protected conduct. . ." <u>Id</u>. at 616 (emphases in original).  In answering this question, the <u>Macon</u> court confirmed that the prosecutor's comment to the jury was constitutional error.  <u>Id</u>.  <u>See also</u> <u>Marshall v. Hendricks</u>, 307 F.3d 36, 70-71, 76 (3rd Cir. 2002) (clear under <u>Griffin</u> that the Constitution is violated by improper comment on enumerated rights other than the right not to testify, including the right to counsel).

The Fifth Circuit, in <u>United States v. McDonald</u>, 620 F.2d 559, 562 (5th Cir. 1980), considered on appeal whether a federal counterfeiting conviction was obtained in violation of defendant's Sixth Amendment right to counsel when the prosecutor during cross-examination elicited testimony that defendant's counsel was present during a search of his home, and then argued the attorney's presence as a factor that could support guilt in the rebuttal phase of closing.  While noting <u>Griffin</u> and <u>Doyle</u>, but also the lack of Supreme Court precedent on "the effect of prosecutorial comments on an accused's exercise of his right to counsel," the court in <u>McDonald</u> reviewed other circuits' precedent relying on <u>Griffin</u> and its own precedent applying <u>Doyle</u> and determined that to reverse a conviction based on a prosecutor's comments on a defendant's exercise of his right to counsel, the comments must "strike at the jugular" of the defendant's story.  <u>Id</u>. at 563.  The court concluded, in the underlying case, that "the real purpose of the reference to the attorney's presence was to cause the jury to infer that McDonald was guilty," rendering the reference "impermissible."  <u>Id</u>. at 564.

The Eighth Circuit, in <u>Zemina v. Solem</u>, 573 F.2d 1027 (8th Cir. 1978), adopted in full the district court's reasoning in reviewing on appeal a grant of a writ of habeas corpus that rested in part on a claim of prosecutorial misconduct.  The district court had considered a Sixth Amendment challenge to a prosecutor's closing argument that referenced the petitioner's trying to call his attorney and commented that "[t]he fact that he called his lawyer is a telling sign."

1   Zemina v. Solem, 438 F. Supp. 455, 464 (1977).  In the absence of controlling precedent directly

2   on point, the court in Zemina found Griffin analogous, and concluded that "comment on a

3   defendant's exercise of his right to counsel could make that exercise costly, . . .  The prosecution

4   should not be allowed to imply that only guilty people contact their attorneys." Id. at 466.

5          The Ninth Circuit has not extended Griffin to prosecutorial comment on a

6   defendant's retention of counsel.  In Bruno v. Rushen, 721 F.2d 1193 (9th Cir. 1983), however,

7   the circuit court reviewed a district court's grant of a writ of habeas corpus based in part on

8   prosecutorial references in opening and closing arguments to the petitioner's hiring an attorney.

9   The closing argument in particular was characterized as "a vicious attack on the accused's claims

10  of innocence by openly hinting to the jury that the fact that the accused hired counsel was in

11  some way probative of defendant's guilt." Id. at 1194 & n.3 (prosecutor described a "Judas

12  syndrome," wherein the "defense is the Judas" and "there are thirty pieces of silver, or the

13  $12,000 given over by the defendant to his counsel.").  Without reaching petitioner's claim that

14  the prosecutor had violated Doyle, and again, without referencing Griffin, the court in Bruno

15  observed:  "[L]awyers in criminal cases are necessities not luxuries, and even the most innocent

16  individuals do well to retain counsel." Id. at 1194-95 (citing to Gideon v. Wainwright, 372 U.S.

17  335, 344 (1963) and Powell v. Alabama, 287 U.S. 45, 68-69 (1932)).  Thus, the court concluded,

18  the prosecutor's "insidious attacks on Bruno's exercise of his constitutional right to counsel and

19  his attacks on the integrity of defense counsel were error" in that they were "an impermissible

20  strike at the very fundamental due process protections that the Fourteenth Amendment has made

21  applicable to ensure an inherent fairness in our adversarial system of criminal justice." Id. at

22  1195.  More recently, in commenting without relying on Bruno, the Ninth Circuit has

23  characterized both it and the Fifth Circuit case of McDonald as "stand[ing] for the proposition

24  that under the Sixth Amendment right to counsel, prosecutors may not imply that the fact that a

25  defendant hired a lawyer is a sign of guilt. . ." United States v. Santiago, 46 F.3d 885, 892 (9th

26  Cir. 1995).

14

1        In a case on direct appeal, the Ninth Circuit took a different tack and extended

2  Doyle to a prosecutor's comment on a defendant's decision to retain counsel. See United States

3  v. Kallin, 50 F.3d 689, 693 (9th Cir. 1995). In Kallin, a tax evasion case, the prosecutor

4  "repeatedly commented on Kallin's retention of counsel and failure to come forward with his

5  explanation of the two sets of [financial] records until trial." Id. at 692 & n.3. Defense counsel

6  moved for a mistrial, which the trial judge denied. The judge did, however, provide a curative

7  instruction, telling the jury to disregard the prosecutor's argument, and affirmatively noting that

8  defendant "certainly has the right to seek the advice of a lawyer" and "the fact that he's hired a

9  lawyer, really has nothing to do with his case." Id. at 692 & n.4. In extending Doyle to the

10  prosecutor's comments, the court in Kallin explained, "[t]he right to counsel is included in the

11  Miranda warnings, and as such is covered by the implicit assurance that invocation of the right

12  will carry no penalty." Id. at 693 (citing United States v. Daoud, 741 F.2d 478, 480-81 (1st Cir.

13  1984)). See also United States v. Ross, 123 F.3d 1181, 1187 (9th Cir. 1997) (citing Doyle and

14  Kallin as applicable precedent in evaluating whether prosecutor's comments violated prohibition

15  on using against a defendant a decision to exercise Fifth Amendments rights of counsel and post-

16  Miranda silence and, if comments were improper, whether the error was harmless beyond a

17  reasonable doubt).

18        In sum, looking either to the Supreme Court precedents of Griffin and Doyle, or

19  Gideon and Powell, four circuits including the Ninth Circuit have found that a prosecutor's

20  comment on a defendant's exercise of his constitutional right to counsel penalizes the defendant

21  for exercising a core constitutional right, whether that right flows from the Sixth Amendment as

22  applied to the states by the Fourteenth Amendment or directly from the Due Process clause of the

23  Fourteenth Amendment. On the facts of this case, then, the California Court of Appeal held,

24  unanimously and correctly, that petitioner's right to counsel was violated by the prosecutor's

25  comments, which invited the jury to infer petitioner was guilty, or at least believed himself to be

26  guilty, from his decision to contact a lawyer.

It is further clearly established, as recognized by the state court of appeal, that on direct review a Griffin-style Constitutional violation by a prosecutor is subject to harmless error review.  Chapman v. California, 386 U.S. 18, 22-26 (1967); see also United States v. Hasting, 461 U.S. 499, 510 (1983).  On federal collateral attack, such review requires the court to determine whether the state court's harmless error analysis was contrary to, or an unreasonable application of, Chapman and, if so, whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  Inthavong v. Lamarque, 420 F.3d 1055, 1059-61 (9th Cir. 2005) (articulating two-part test in reconciling Chapman harmless error standard applicable on direct review with harmless error standard under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), applicable on federal habeas review).

The circuit court decisions discussed above also are instructive here, in their harmless error analyses.  In Macon, the Third Circuit applied the test articulated in Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963), cited in Chapman, 386 U.S. at 23-24: namely, that "an error of constitutional dimension is not harmless if 'there is a reasonable possibility that [it] might have contributed to the conviction.'" 476 F.2d at 616.  "[B]ecause critical portions of the evidence were disputed, the credibility of the petitioner as a witness was a central issue."  Id.  In this context, the prosecutor's comment in Macon about petitioner's consulting with counsel may have raised in the jurors' minds an inference that petitioner was guilty, or believed himself to be, and in turn might have caused the jurors to disbelieve petitioner's testimony.  Id. at 616-17.  Thus, the court was not able to conclude that the comment was harmless beyond a reasonable doubt.  Id. at 617.  In Zemina, the district court whose decision was affirmed by the Eighth Circuit quoted from Macon, evidently finding the facts of its case sufficiently analogous to adopt Macon's analysis in finding the prosecutor's comment during Zemina's trial was not harmless beyond a reasonable doubt.  438 F. Supp. at 466.

The Fifth Circuit in McDonald rejected harmless error analysis in favor of a "harmful per se" standard: "there are some constitutional rights so basic to a fair trial that their

16

infraction can never be treated as harmless error."  620 F.2d at 564.  The court continued,

explaining its reasons for reversing the conviction:  "[c]omments that penalize a defendant for

the exercise of his right to counsel and that also strike at the core of his defense cannot be

considered harmless error."  Id.  The same court, in Marshall, reverted to harmless error analysis,

and affirmed a lower court's finding of harmless error based on three key factors by which the

court distinguished the facts in Marshall from those in Macon: the prosecution's attack as

indirect, through cross-examination of defendant's sister, rather than directly focused on

defendant; the making of three separate defense objections, which were sustained, during the

"brief interchange" between the prosecutor and the sister; and the "obvious" nature of the

prosecutor's remarks, which would have been perceived by the jury presumably unfavorably, as

"yet further attempts to badger and twist the testimony of a minor witness."  307 F.3d at 76.

In Bruno, the Ninth Circuit described the offending prosecutorial comments as

previewing, during opening argument, the testimony of an "important witness" for the defense

who repudiated earlier pro-prosecution statements given to government investigators, with the

observation that the reversal at trial was the result of consultation with the accused's attorney.

721 F.2d at 1194 & n.1.  In closing, the prosecutor "returned to this theme," "in hopes of

destroying the credibility of [the witness's] testimony on the stand," and "without producing one

shred of evidence to support his accusations."  Id. at 1194 & n.2.  The court then performed the

following Chapman analysis:

> The improper remarks were made at an important stage of the trial
> and were extensive.  They were not accidental but calculated to
> wrongly impute guilt to the defendant.  These comments "strike at
> the jugular" of the defendant's story, and they were not withdrawn
> upon objection.  The cumulative effect of the prejudice can
> reasonably be regarded as possibly affecting the verdict and
> thereby denying the defendant a fundamentally fair trial. . . . we
> find the error not harmless beyond a reasonable doubt.

721 F.2d at 1195 (citation omitted).

/////

1        In <u>Kallin</u>, the court reviewed the record in prior decisions reviewing prosecutorial

2   misconduct, noting that as few as "three improper questions and answers. . ., despite a strong jury

3   instruction to disregard the questions" had required reversal.  50 F.3d at 694 (citing <u>United States</u>

4   <u>v. Newman</u>, 943 F.2d 1155, 1158 (9th Cir. 1991)).  Also, "seven questions about a defendant's

5   silence, answered after an objection was overruled, following by a comment during closing

6   argument" in one case, and "five impermissible questions and a comment in closing argument" in

7   <u>Doyle</u> itself, were "sufficiently harmful to require reversal."  <u>Id</u>. (citing, inter alia, <u>United States</u>

8   <u>v. Foster</u>, 985 F.2d 466, 468-69 (9th Cir. 1993)).  In <u>Kallin</u>, the court found the prosecutor's

9   offending comments, which included reference during closing argument, without objection, to

10  defendant's silence, to "far exceed" the comments in these other cases.  <u>Id</u>.  Moreover, the

11  comments were "not inadvertent" but calculated to elicit an inference of guilt from the jury.  <u>Id</u>.

12  Given this context, the court's curative instruction, given a day after the improper questioning,

13  was insufficient to correct the error.  <u>Id</u>. at 694-95. Given the conflicting interpretations of the

14  evidence presented by the prosecution and the defense, the jury's assessment of the defendant's

15  credibility was central.  The court found the prosecutorial misconduct "inexcusable" such that the

16  conviction could not stand.  <u>Id</u>. at 695.  <u>Cf</u>. <u>Ross</u>, 123 F.3d at 1187-88 (where defendant or his

17  trial attorney first mentioned his retention of counsel, he opened door to prosecutor's questions as

18  proper impeachment and thus suffered no actual prejudice; any error was harmless beyond

19  reasonable doubt).

20        2. <u>Analysis</u>

21        In this case, as quoted above, the California Court of Appeal majority concluded

22  that the prosecutorial error was harmless under <u>Chapman</u>, because it found defense counsel had

23  "strongly refuted" the claim that petitioner's conduct evinced a consciousness of guilt, it "did not

24  think" a reasonable juror would infer guilt from a defendant's decision to contact counsel and

25  because the jury did not convict on all charges despite roughly similar evidence, indicating that

26  the prosecutor's improper comments did not tip the balance toward conviction.  Regarding the

1   latter point, the dissent concluded the jury's failure to convict on some charges was attributable

2   to important evidentiary differences; namely, where there was evidence other than petitioner's

3   testimony that called his daughter's testimony into question, the jury acquitted petitioner.

4           After a comprehensive review of the record and careful consideration of the

5   applicable Brecht standard, this court concludes that the majority's conclusion that the error was

6   harmless beyond a reasonable doubt under Chapman was unreasonable, as explained below.

7           As the state appellate majority noted, there was no corroborating physical

8   evidence of molestation.  See CT II 26 (list of exhibits marked for identification); see also CT II

9   29, 30, 31; RT 1321-1322 ("pretest" identified as defense Ex. K is a spelling test), 1328 (Ex. J is

10  post test).  There was evidence of possible bias on behalf of the daughter who was the alleged

11  victim and her mother, petitioner's ex-wife.  The daughter had resisted petitioner's disciplinary

12  efforts, and had thought that her mother could move into petitioner's "big house" once he was

13  gone.  RT 842-844 (wanted to be "free" from dad to party and paint nails, and wanted mom to

14  live in "big house"); see also RT 1314 (shortly before her reports prompted call to Child

15  Protective Services, daughter told schoolmates she was related to "Randy Macho Man Savidge"

16  prompting requests for autographs; petitioner made her tell her friends story was not true, which

17  upset her).  The ex-wife testified about the lower standard of living she had compared to

18  petitioner, after their divorce.  RT 579 (petitioner lived in "huge" house compared to her two

19  bedroom, one bath "flat" shared with three other women).  Both the ex-wife and petitioner

20  testified to significant friction and discomfort following the divorce, which petitioner initiated, he

21  said, because the ex-wife was having an affair.  RT 1171; see also RT 548-549 (custody disputes

22  after petitioner granted primary custody), 578 (ex-wife complained of need to travel long

23  distances to see children), 602 (petitioner initiated divorce), 607-608, 1176 (custody disputes

24  following divorce).  Certain testimony suggested the ex-wife might have had mixed motives for

25  marrying petitioner, and staying married at one point.  RT 1162 (through marriage, ex-wife

26  avoided having to serve in Germany), 1167 (promised to put petitioner through school once she

was done, if he left military).  Once the couple did divorce, petitioner moved in with his ex-wife's parents.  RT 547 (ex-wife noted awkwardness of move).  When petitioner remarried, new conflicts surfaced.  RT 622-623 (ex-wife upset that girls called new wife "Mom"), 1206-1207 (conflict between ex-wife and new wife over access to apartment once petitioner remarried), 1218-1219, 1220-1221 (other conflicts once remarried).  At some point, the ex-wife arranged to give the daughter an illustrated book titled "Growing and Changing; a Handbook for Preteens." RT 1333-1334.

There were certain inconsistencies in the daughter's testimony, and evidence was introduced that certain incidents could not have occurred as she claimed.  See RT 870, 872, 881, 888, 894.  While the daughter described one incident in a trailer parked in petitioner's brother's driveway, the brother testified that the trailer was inaccessible due to a remodel and petitioner never had a key.  RT 1097-1106.  The daughter described another incident in a green car; the brother said petitioner did not own the car at that time.  Id.; see also RT 1077, 1210 (Camry not owned until after time period of alleged acts).  The daughter described yet another incident on a pullout sofa owned by her paternal grandfather; the grandfather said he never owned such a sofa. RT 957-958.  The daughter said she slept with her father on family visits out of state, and at times at home; paternal grandparents testified she did not as a general rule.  RT 960 (petitioner slept in living room with his father during visit to Pennsylvania), 993 (paternal step-grandmother said girls slept with her during visit), 1015-1019 (paternal grandmother slept with girls when she was caretaker), 1021-1022, 1035 (Pennsylvania visit); see also RT 1041-1043, 1063, 1230-1232 (petitioner and his mother say she gave permission for daughters to sleep with father "one time only," before he left on Peru trip, when mother was there; they fell asleep while he worked on laptop).  The daughter said her father molested her in the family car after he picked her up from school; her grandmother said petitioner and his daughter were not alone in car.  RT 1027, 1315. On cross-examination, the daughter responded to one question by saying she thought she would "get in trouble" if she said in court that petitioner did not molest her.  RT 846.

1          A number of witnesses testified to an absence of any indication molestations were

2     occurring.  RT 964 (paternal grandmother), 997 (paternal step-grandmother), 1019, 1024, 1079

3     (paternal grandmother).  A friend of petitioner's said he had spent social and vacation time with

4     petitioner and never seen any inappropriate behavior; the friend wanted petitioner to be guardian

5     for his children if anything happened to him.  RT 1091-1092; see also RT 1143, 1145, 1154 (co-

6     workers' impressions as positive).  The daughter's maternal grandparents, with whom petitioner

7     and both daughters lived following the divorce and who lived nearby petitioner and his daughters

8     for significant periods of time, did not testify.  See RT 1015-1016, 1172, 1174, 1179-1181.

9          At no point did petitioner's case open the door to impeachment based on his

10    retention of counsel.  Also at no point did the trial judge give a curative instruction or closing

11    instruction telling the jury to disregard the prosecutor's improper comments or closing arguments

12    with respect to defendant's right to consult an attorney, or that no negative inference should be

13    drawn.  See RT 1365-1384, 1386, 1394, 1499-1509; CT II 43-91 (final instructions given).

14         In the absence of corroborating physical evidence, the case rested significantly on

15    the testimony of petitioner's daughter, who testified to numerous – even "thousands" of –

16    instances of molestation, while defendant denied adamantly that any molestation occurred.  See

17    RT 790-798, 799-801, 802-808, 808-811, 811-815, 816-817, 817-819, 820-823 (relevant

18    excerpts of daughter's testimony); cf. RT 1159-1160, 1190, 1200, 1203, 1213, 1214, 1216-1217,

19    1224, 1232, 1237, 1255, 1264, 1265-1266, 1272-1273, 1276, 1277, 1282, 1309, 1311-1312

20    (petitioner's testimony).  As the California Court of Appeal recognized, "the trial was a

21    credibility contest between the victim . . . and the testifying defendant."  Op. at 2-3.  The jury's

22    only questions during deliberation were with respect to the daughter's testimony.  CT II 93, 96,

23    102.

24         While the state appellate majority found the "sole contrary evidence" with respect

25    to the counts on which petitioner was acquitted – counts 9, 11 and 12  – was "defendant's general

26    denial," Op. at 26, there was evidence other than petitioner's testimony calling his daughter's

testimony on these counts into question.  As noted, with respect to the acquittal on count eleven, there was evidence from petitioner's brother that, at the time of the alleged molestation, petitioner did not own the car in which his daughter said the molestation occurred.  RT 1101-1102.  Regarding the acquittal on count twelve, there also was evidence from petitioner's brother that petitioner did not have a key to the trailer at issue, which the brother owned, and even if he had accessed a key it would not have been possible to enter the trailer because of a remodeling project.  RT 1097-1101, 1102-1106.  The jury also acquitted on count nine, which was related to count twelve in relying on the daughter's testimony that petitioner engaged in "similar type of conduct" with her in the bathroom as in the trailer.  RT 816.

As in <u>Chapman</u>, the prosecutor at the conclusion of petitioner's trial "continuously and repeatedly" impressed on the jury that petitioner's decision to contact a lawyer showed he was not innocent.  <u>Chapman</u>, 386 U.S. at 25-26; RT 1393-1394, 1499-1500.  In closing and final rebuttal, the prosecutor made six separate references to contacting an attorney, and repeatedly invited the jury to infer petitioner believed himself to be guilty despite his protestations of innocence at trial, all without objection and without the administration of any curative instruction.  This case thus is more akin to <u>Macon</u>, <u>Bruno</u> and <u>Kallin</u>, than <u>Marshall</u> and <u>Ross</u>. <u>Compare</u> <u>Macon</u>, 476 F.2d at 616-17 (prosecutor's improper comments during closing; case was credibility contest), <u>Bruno</u>, 721 F.2d at 1195 (improper argument during opening and closing, attacking defendant's credibility), and <u>Kallin</u>, 50 F.3d at 694-95 (repeated references to retention of counsel, without objection, not cured by instruction given a day later, where case rested on credibility) <u>with</u> <u>Marshall</u>, 307 F.3d at 76 (questions about counsel directed to third party witness, with contemporaneous objections sustained, rendering jury's exposure "brief") and <u>Ross</u>, 123 F.3d at 1187-88 (defendant and his counsel opened door to impeachment).  Against the prosecutor's argument, petitioner's trial counsel in his own closing attempted to persuade the jury to see the case in a different light; he avoided the issue of petitioner's retention of counsel, leaving the prosecutor's characterization unchallenged.

1    Given the centrality of petitioner's credibility to the determination of guilt in his

2  case, and the overall record of the case, "[s]uch a machine-gun repetition of a denial of

3  constitutional rights" as delivered by the prosecutor in his final rebuttal, "designed and calculated

4  to make petitioner['s] view of the evidence worthless," cannot be harmless under Chapman.

5  Chapman, 386 U.S. at 26.  This court concludes that the California Court of Appeal's

6  determination was both contrary to, and an unreasonable application of, Chapman.

7    This court thus must determine whether the prosecution's error had a substantial

8  and injurious effect or influence in determining the jury's verdict.  Brecht, 507 U.S. at 637; see

9  Inthavong, 420 F.3d at 1059-61. Under the Brecht standard of review, if the court is in "grave

10  doubt as to the harmlessness of an error that affects substantial rights, it should grant relief."

11  O'Neal v. McAninch, 513 U.S. 432, 445 (1995).  It is not enough to conclude, as did the

12  appellate majority, that a reasonable juror would not infer guilt from petitioner's decision to

13  contact counsel.  Given the Constitutional dimension of the error here, and the closeness of the

14  case, this court must answer the question, "[D]id that error have a 'substantial and injurious

15  effect or influence' on the jury's decision?'" with, at least, "'It is extremely difficult to say.'" Id.

16  at 442.  Given the court's grave doubt, relief should be granted.

17    Accordingly, while confirming the state appellate majority's conclusion that the

18  prosecutor's comments violated petitioner's Sixth Amendment right to counsel, applicable to the

19  state through the Fourteenth Amendment, this court concludes that the Constitutional violation

20  was not harmless and the effect on the jury's verdict was substantial and injurious.  The petition

21  should be granted on claim one.

22    B.  State Law Questions:  Statute Of Limitations And Court Of Appeal's Modification
        Of Count Three ("Ground 2" and "Ground 3")

23

24    1.  Ground 2

25    In "Ground 2" petitioner takes issue with the Court of Appeal's failure to dismiss

26  certain counts.  In these counts, prosecutors charged that crimes occurred within a certain time

1   period; part of that period was outside the applicable limitations period.  On direct appeal,

2   petitioner argued this deprived the trial court of jurisdiction as to those counts.  Resp't's

3   September 21, 2005 Lodged Doc. #1 at 28-29.  The Court of Appeal agreed the counts at issue

4   could have been dismissed before trial had petitioner requested as much.  Op. at 14.  However,

5   the Court of Appeal found it was not limited to the face of the charging document in determining

6   whether the offenses in question were time-barred.  Rather, it examined the entire record for

7   undisputed facts to determine whether the offenses themselves were time-barred, and identified

8   facts indicating that all acts necessary for a finding of guilt occurred within the limitations period.

9   Id. at 14-15.  While petitioner disputes whether the acts occurred at all, he does not point to any

10  facts suggesting that, if they did occur, they occurred outside the limitations period.  Pet. at 13-

11  14.

12          The Court of Appeal did find that the limitations period applicable to § 288(a) did

13  not bar petitioner's conviction for that offense, in part, because the limitations period was

14  sufficiently tolled under California Penal Code § 803(f).  Op. at 12.  Petitioner argued before the

15  Court of Appeal, as he does now, that his Sixth Amendment right to a jury trial encompasses the

16  right to a jury determination of whether or not tolling applies under § 803(f).  The Court of

17  Appeal rejected petitioner's argument, pointing out that under California law, petitioner does not

18  have a right to have the elements of a statute of limitations defense rejected by a jury if, as in this

19  case, the undisputed facts on appeal show the defense is not meritorious.  Id.  Petitioner does not

20  suggest that the facts establishing that his limitations defense is not meritorious are disputed and

21  this court cannot reach such a conclusion from its review of the record.  Moreover, the court

22  finds nothing in federal law suggesting that, under the Sixth Amendment, a jury must pass on a

23  statute of limitations defense if the facts demonstrating the defense is not a bar are undisputed.

24          2.  Ground 3

25          In "Ground 3" petitioner seeks reversal of his conviction on count three.  Count

26  three charged that between January 1, 1995 and January 3, 2000, petitioner committed the crime

24

1    of aggravated criminal sexual assault of a child in violation of California Penal Code § 269(a)(4).

2    CT 78, 105.  On direct appeal, petitioner argued there was insufficient evidence to support a

3    finding of guilt as to count three because, among other things, the prosecution failed to establish

4    that the acts alleged occurred after November 30, 1994, the date upon which California Penal

5    Code § 269(a)(4) was enacted.  Resp't's September 21, 2005 Lodged Doc. #1 at 15-18.  Based on

6    a suggestion made by the prosecution, the Court of Appeal reduced petitioner's § 269(a)(4)

7    conviction to one for oral copulation with a child under California Penal Code § 288a.  The court

8    also allowed amendment of count three to conform to evidence presented at trial, that the acts

9    alleged occurred between August 1, 1993 and January 3, 2000.  Op. at 12-13.

10                  3.  Analysis

11                  Except as noted above, the arguments presented in "Ground 2" and "Ground 3"

12   are premised on state law.  Pet. at 10-19.  As indicated above, federal habeas relief is available

13   only for violations of federal law.  28 U.S.C. § 2254(a).  Petitioner cites federal principles such

14   as "due process" and points to federal case law in support of Grounds 2 and 3, but petitioner fails

15   to point to anything upon which this court could reasonably base a finding that the state court

16   violated his Constitutional rights or that these claims are not precluded by 28 U.S.C. § 2254(d).

17          C.  Verdict As To Count Four ("Ground 4")

18                  In count four of the information, petitioner was charged with a violation of

19   California Penal Code  § 288(b)1.  Before they retired to deliberate, jurors were instructed that to

20   find petitioner guilty of count four, they would have to find the elements of California Penal

21   Code § 288(b)1 were met.  CT 74; RT 1380:3-1381:25.  Jurors found petitioner guilty of count

22   four, but on the verdict form, count four was identified as a violation of California Penal Code

23   § 269(a)(4).  CT 106.  When asked in open court if they had found petitioner guilty of count four,

24   a "violation of section 269(a)(4), of the penal code . . .," the jurors responded "yes."  RT 1525:1-

25   10.  The trial court discovered the error shortly after jurors had been excused.  CT 100.  At

26   sentencing the court determined that petitioner had in fact been found guilty of § 288(b)(1) in

count four and sentenced petitioner to six years' imprisonment on that count.  CT 140.  Petitioner asserts the actions of the trial court violated his right to due process under the Fourteenth Amendment and his right to a jury trial under the Sixth Amendment.  Pet. at 19-22.

On direct appeal, the California Court of Appeal determined that petitioner's rights arising under California law were not violated by the actions of the trial judge described above.  Op. at 28-30.  Here again, petitioner fails to present any valid reason or authority for departure from the rule that federal courts are bound by a state court's interpretation of its own laws.  Petitioner's violation of due process claim must be rejected.

Under the Sixth Amendment, petitioner has a right to have a jury rather than a judge reach a finding of guilt in a criminal case.  Sullivan v. Louisiana, 508 U.S. 275, 277 (1993).  Petitioner suggests the trial judge, and not the jury, found him guilty of count four and this violated his Sixth Amendment rights.

On direct appeal, the California Court of Appeal found the jury did in fact find petitioner guilty of committing a violation of § 288(b)(1), and there was simply a typographical error in recording the verdict.  Op. at 29.  Under 28 U.S.C. § 2254(e)(1) the court must presume this determination of fact is correct; petitioner has the burden of rebutting this presumption by clear and convincing evidence.  Considering jurors were properly instructed as to what it was they had to find to convict petitioner on count four as charged, petitioner cannot meet his burden.  This claim should be denied.

D.  "Moving Touch" Instruction ("Ground 5")

Petitioner asserts his right to due process under the Fourteenth Amendment was violated because a jury instruction created an inappropriate presumption.  Pet. at 22-24.  The

/////

/////

/////

/////

1   instruction reads as follows:

2   Now concerning these charges in Counts Four through Thirteen,
    each touching of the body of a child with the required intent is a
3   separate crime.  When the touching moves from one area of the
    body to another–to another different area of the body, this is a
4   separate offense even though it occurs close in time to the earlier
    touching.
5

6   RT 1381:21-25.  Petitioner takes issue with the instruction because, he says, it is incorrect to say

7   under California law a moving touch necessarily constitutes at least two separate crimes.

8          Petitioner's claim concerns an interpretation of California law, which the

9   California Court of Appeal specifically addressed on direct review.  Op. at 19-20.  Federal courts

10  generally are bound by a state court's interpretation of its own laws, Bains v. Cambra, 204 F.3d

11  964, 972 (9th Cir. 2000), and petitioner fails to present any valid reason for departure from this

12  rule.

13         Petitioner also seems to suggest the instruction allowed jurors to find him guilty

14  of a second sex offense based solely upon a moving touch and without a showing that the moving

15  touch was accompanied by the other elements of the relevant sex offense.  Pet. at 22-24.  This

16  interpretation of the instruction is not reasonable.  Jury instructions cannot be read in artificial

17  isolation, Boyde v. California, 494 U.S. 370, 378 (1990), and it is clear from a reading of the

18  entire instruction, not just the second sentence, that the court is simply clarifying what a "touch"

19  is for purposes of counts four through thirteen.  See RT 1381.  Furthermore, if it were not clear to

20  jurors after they heard this instruction that all of the offenses charged had more elements than a

21  simple touch, it would have been when they reviewed the charges.  RT 1380-1381.

22         For these reasons, petitioner's claim regarding the "moving touch" instruction

23  should be rejected.

24         E.  Denial Of Equal Protection ("Ground 6")

25         Petitioner was convicted of two counts of aggravated sexual assault of a child

26  under California Penal Code § 269 and sentenced to two consecutive terms of fifteen-years-to-

27

life imprisonment.[4]  Resp't's May 5, 2008 Lodged Doc. #1 at 2; CT 138.  Petitioner asserts, in

essence, these convictions are unconstitutional because, under California Penal Code § 269, he

faced exposure to a more lengthy term of incarceration simply because of his age, in violation of

the Equal Protection Clause of the Fourteenth Amendment.  Pet. at 24-26.  An element of

California Penal Code § 269 applicable at the relevant time required that the victim be younger

than fourteen and at least ten years younger than the accused.[5]  As indicated above, the alleged

molestations began in 1993 when the victim was 5 and ended in 1999 when she was 11.  In 1993,

petitioner was 30 and he was 36 when the alleged molestations ended.  CT 138.

The Equal Protection Clause requires the government to treat similarly situated

people alike.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  If a

challenged statute does not involve a protected classification, a habeas petitioner must show that

the statute treats similarly situated people differently without a rational relationship to a

legitimate state purpose in order to be successful on an equal protection challenge to the statute.

Willowbrook v. Olech, 528 U.S. 562, 564 (1981).  Age is not a protected classification.  Gregory

v. Ashcroft, 501 U.S. 452, 470 (1991).[6]

The California Court of Appeal addressed this claim on direct review and

identified the correct legal principles applicable to plaintiff's claim.  Op. at 7-8.  The court also

/////

---

[4]  In his argument, petitioner implies he was convicted of three counts of aggravated sexual assault of a child under California Penal Code § 269.  Pet. at 24:26-27.  However, on direct appeal, the California Court of Appeal reduced one of the counts, count three, to oral copulation with a child under California Penal Code § 288a.  See section III. B. supra.

[5]  The version of California Penal Code § 269 referenced here was in effect between 1994 and 2006.  The section was amended in 2006.  In the current version of the statute, the victim must be at least seven years younger than the accused.

[6]  Petitioner suggests that any review of criminal statutes for violations of the Equal Protection Clause requires a heightened level of scrutiny because such statutes implicate the fundamental interest of personal liberty.  Pet. at 25.  The Supreme Court rejected this argument in Chapman v. United States, 500 U.S. 453, 465 (1991).

1  found that the following legitimate purposes are served by the age parameters in California Penal

2  Code § 269:

3          1)  Children are more susceptible to persuasion by materially older
           persons and therefore require more protection from them; and

4

5          2)  An older offender is more likely to be a pedophile for whom a
           lengthier separation from society is warranted as a means to protect
           society from the offender's compulsion.

6

7  Id. at 8.

8          Petitioner has not met his burden of demonstrating that the purposes identified by

9  the Court of Appeal do not provide a rational basis for the age parameters identified in California

10  Penal Code § 269.  F.C.C. v. Beach Communications Inc., 508 U.S. 307, 315-16 (1993)

11  (regarding burden).

12          For the foregoing reasons, and because plaintiff is precluded from obtaining relief

13  on his equal protection claim by 28 U.S.C. § 2254(d), his equal protection claim should be

14  rejected.

15      F.  Instructions For Lesser Included Offenses ("Ground 7")

16          Petitioner argues he was deprived of due process by the trial court's failure, sua

17  sponte, to instruct on lesser included offenses as to three counts. Pet. at 26-28.  In Bashor v.

18  Risley, 730 F.2d 1228 (9th Cir. 1984), the Ninth Circuit held generally, the "[f]ailure of a state

19  court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional

20  question and will not be considered in a federal habeas corpus proceeding."  Id. at 1240.   The

21  court sees no cause here to deviate from the rule announced in Bashor.  Petitioner's claim that the

22  failure to instruct on lesser included offenses violated due process is not cognizable in this action.

23      G.  Failure To Instruct As To Petitioner's Good Character ("Ground 8")

24          Petitioner claims the trial court violated his Fourteenth Amendment right to due

25  process by not instructing the jury sua sponte, using California Criminal Jury Instruction

26  (CALJIC) No. 2.40, that evidence of a defendant's good character for the traits involved in the

1    commission of the offenses charged may be sufficient to raise a reasonable doubt of guilt.  Pet. at

2    28-29.  On direct appeal, the Court of Appeal addressed whether failure to give the "good

3    character" instruction violated state law.  Resp't's September 21, 2005 Lodged Doc. #1 at 62-64;

4    Op. at 18-19.  The California Court of Appeal noted that, in general, good character is not a

5    "defense" to sex offenses but is merely relevant in assessing a defendant's credibility, and thus

6    the trial court had no sua sponte duty to provide CALJIC No. 2.40.  Op. at 18-19 (citing People

7    v. Saille, 54 Cal.3d 1103, 1109 (1991)).

8            Petitioner did present evidence of his good character as a defense to the crimes

9    charged, supported by evidence.  See, e.g., RT 1091-1092, 1143-1145, 1154.  And failure to

10   instruct on the defense theory of the case is error.  Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir.

11   2007).  But "good character" was not a defense theory in this case, and it was not relevant to

12   rebutting an element of one of the charged crimes.  Rather, the testimony about petitioner's

13   character was simply evidence the jury could have considered in determining whether the defense

14   theory put forward should be believed.  See, e.g., RT 1371, 1373.  Petitioner's defense theory

15   was that he did not commit the acts charged.  See RT 1424:28-1425:3 (defense counsel rejecting

16   instructions on lesser charges because, "tactically speaking it would require us to take a position

17   that anything – that something occurred, and that is not our position[.]"); see also RT 1431

18   (closing argument).

19          Petitioner fails to point to anything indicating that the failure of the trial court to

20   provide jurors with CALJIC No. 2.40, sua sponte, constitutes a violation of federal law.

21   Petitioner has not met his burden of showing he is not precluded from obtaining relief under 28

22   U.S.C. § 2254(d) on this claim.

23          H.  Ineffective Assistance of Appellate Counsel ("Ground 9")

24          Petitioner asserts he was subjected to ineffective assistance of appellate counsel

25   on direct appeal in several respects discussed below.  Pet. at 29-45.  In order to prevail on this

26   claim, petitioner must show counsel was objectively unreasonable in failing to raise non-

1 | frivolous issues and that, but for counsel's failure, there is a reasonable probability he would

2 | have prevailed on appeal.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000).

3 |         1. Lack Of Jurisdiction For Count One

4 |         Petitioner argues appellate counsel was ineffective for failing to argue that the

5 | Sixth and Fourteenth Amendments deprived the state trial court of jurisdiction over count one

6 | because the acts alleged in count one were alleged to have occurred in Northern California

7 | counties other than Sacramento.  Petitioner claims he has a right under the Sixth and Fourteenth

8 | Amendments to be tried by jurors who reside in a county where at least some of the acts alleged

9 | in count one occurred.  Pet. at 31-34.

10 |         Well before petitioner's appellate court brief was filed on April 16, 2002, the

11 | California Supreme Court held that neither the Sixth nor the Fourteenth Amendment requires that

12 | a criminal defendant be tried by jurors residing in a county where at least some of the acts

13 | constituting the crime for which the defendant is being tried occurred.  Price v. Superior Court,

14 | 25 Cal.4th 1046, 1061 (2001).  Neither the Ninth Circuit nor the Supreme Court has ever issued a

15 | decision that is in any respect contrary to the conclusion reached in Price.  See Stevenson v.

16 | Lewis, 384 F.3d 1069, 1072 (9th Cir. 2004) (Supreme Court has never held that Sixth

17 | Amendment's requirement that a criminal defendant be tried in the "district" where the crime

18 | was committed is applicable to the states nor has the Court defined what constitutes a "district"

19 | within a state).  This court cannot find it likely petitioner would have prevailed on appeal if his

20 | appellate counsel had raised the jurisdictional argument with respect to count one.

21 |         Petitioner also appears to claim appellate counsel should have challenged the trial

22 | court's jurisdiction over count one under California law.  This argument too is unavailing, as

23 | jurisdiction for any crime committed in California lies with any of the state's superior courts.

24 | See, e.g., People v. Sering, 232 Cal. App. 3d 677, 685 (4th Dist. 1991).

25 | /////

26 | /////

2. <u>Insufficient Evidence To Support Count One</u>

As indicated above, petitioner was charged in count one with a violation of California Penal Code § 269(a)(4).  CT 7.  Petitioner argues his appellate counsel should have argued the evidence presented to the jury with respect to count one was not constitutionally sufficient to convict because the testimony offered failed to establish that the alleged unlawful acts were committed by force, violence, duress, or fear of immediate and unlawful bodily injury as required by the version of § 269(a)(4) in effect between 1994 and 2006.  Pet. at 38-39.

A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to convict.  In <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), the Supreme Court held "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  (Emphasis in original.)

In count one, petitioner was charged with committing oral copulation with the victim between January 1, 1995 and January 3, 2000.  CT 7.  The victim testified at trial that when she was eight or nine she took a drive in a van to San Francisco International Airport with petitioner.  RT 803:8-804:5.  The time frame would have been approximately 1996 to 1997.  <u>See</u> RT 608:24-26 (testimony of the victim's mother that the victim started kindergarten in 1993, making her eight in 1996 and nine in 1997).  According to the victim, during the drive, petitioner pulled down his pants, pulled the victim's head in the direction of his penis and then made the victim put her mouth on his penis.  RT 804:11-21.  The victim testified this was not something she wanted to do and that she tried to get away but petitioner stopped her from getting away by forcing her head back to his penis.  RT 804:19-805:3.

In light of this testimony, a rational trier of fact who believed the daughter could have found that petitioner committed oral copulation with the victim by force, violence, duress, or fear of immediate and unlawful bodily injury between January 1, 1995 and January 3, 2000.
/////

1  Petitioner cannot show prejudice for appellate counsel's failure to assert an insufficiency of the

2  evidence claim concerning count one on direct appeal.

3       Petitioner also argues appellate counsel should have urged that petitioner's

4  conviction on count one be overturned because jurors were not instructed that "force" in the

5  context of California Penal Code § 269(a)(4) meant "force substantially different from or greater

6  than that necessary to accomplish the sex act." However, jurors were in fact given this

7  instruction. RT 1378:22-1379:10; CT 73.

8       Petitioner's claim that his counsel on direct appeal was ineffective for failing to

9  present an insufficiency of the evidence claim must be rejected.

10       3. Insufficient Evidence To Support Count Two

11       Petitioner claims his appellate counsel should have argued the evidence presented

12  to the jury with respect to count two was not constitutionally sufficient because the testimony

13  offered also failed to establish the use of force, duress, menace or fear of immediate bodily injury

14  as required on this count by the version of California Penal Code § 269(a)(4) in effect between

15  1994 and 2006.

16       In count two, petitioner was charged with committing oral copulation with the

17  victim between August 1, 1993 and January 3, 2000. CT 7. At trial, the victim testified that

18  defendant made the victim put her mouth on his penis while they were riding home from school

19  in a "T-Bird" sometime when the victim was in fifth grade. RT 807:4-809:19, 809:20-810:1.

20  The time frame for this incident would have been approximately 1998 to 1999. With respect to

21  whether force was used, the victim testified as follows:

22       Q.    Okay, did he ever make you put your mouth on his privates
             in a different vehicle [other than the van]?
23
24       A.    Yes.

25       Q.    What vehicle was that?

26       A.    Camry and the T bird. . .

| | | |
|---|---|---|
| 1 | Q. | Did you say a T bird and what else? |
| 2 | A. | Camry. |
| 3 | Q. | Camry.  So it happened in both cars? |
| 4 | A. | Yes. |
| 5 | Q. | And would the same thing happen? |
| 6 | A. | Yes. |

RT 807:4-21.

While the daughter's testimony could have been more clear as to whether the incident she said occurred in the "T-bird" was accompanied with force, there is enough in the record to meet the standard articulated in <u>Jackson</u>.  The victim testified that the defendant "made" her put her mouth on his penis.  A rational juror who believed the daughter could have inferred that when she testified "the same thing happened," she was referring to the manner in which petitioner applied force to her in the van.  For these reasons, and because petitioner's claim is barred by 28 U.S.C. § 2254(d), petitioner's claim that his counsel on direct appeal was ineffective for failing to argue sufficiency of the evidence with respect to count two must be rejected.

### 4.  Lesser Included Offenses

Petitioner asserts his appellate counsel should have argued petitioner was denied his Fourteenth Amendment right to due process by the trial court's failure to provide jurors with instructions for the lesser included offenses of counts 1 to 3.  Pet. at 39-41.  As indicated above, the trial court did not deprive petitioner of due process by failing to instruct as to lesser included offenses.  <u>See</u> page 29 <u>supra</u>.  Petitioner was not prejudiced by appellate counsel's failure to raise this issue on direct appeal.

### 5.  Lack Of Jurisdiction On Counts Four Through Thirteen

Petitioner asserts his appellate counsel was ineffective for failing to argue Fourteenth Amendment violations as a result of petitioner's being tried on counts four through

1  thirteen when the trial court lacked jurisdiction over those charges.  Petitioner asserts the court

2  lacked jurisdiction because the crimes, as charged, were time barred under California law.  As

3  noted above, the Court of Appeal found the trial court did not lack jurisdiction to try petitioner on

4  counts four through thirteen.  Resp't's Lodged Docs. #3 at 14-15.  The Court of Appeal thus

5  impliedly rejected any argument that petitioner's Fourteenth Amendment rights were violated

6  based on any violation of state law by the trial court.  For these reasons, petitioner cannot

7  demonstrate prejudice from appellate counsel's failure to raise the Fourteenth Amendment claim.

8               6.  Good Character Instruction

9               Petitioner asserts his appellate counsel should have argued the trial court violated

10  petitioner's due process right by not giving jurors CALJIC No. 2.40, concerning how jurors can

11  consider evidence of a defendant's good character.  As discussed above, petitioner's right to due

12  process was not violated by the trial court's failure to give CALJIC No. 2.40.  See pages 29-30

13  supra.  Petitioner was not prejudiced by counsel's failure to raise this issue on appeal.

14  IV.  Conclusion

15               For the foregoing reasons, the court will recommend that petitioner's application

16  for writ of habeas corpus be denied on Grounds 2 through 9 but granted on Ground 1.

17               In accordance with the above, IT IS HEREBY ORDERED that:

18               1.  Petitioner's request that the court hold an evidentiary hearing is denied;

19               2.  Petitioner's unopposed requests that the court consider additional information

20  in support of his application for writ of habeas corpus (#29 & #33) are granted;

21               3.  The information provided to the court by petitioner on April 28, 2008 and May

22  9, 2008 is deemed a part of the record considered by the court in making these findings and

23  recommendations; and

24               4.  Respondent's May 2, 2008 request to redact (#31) is granted retroactively to

25  May 2, 2008.

26  /////

        IT IS HEREBY RECOMMENDED that:

        1.  Petitioner's application for a writ of habeas corpus be granted as to his first claim due to the infringement on petitioner's Sixth Amendment right to counsel as a result of the prosecutor's improper argument;

        2.  The Federal Defender's Office be appointed to represent petitioner;

        3.  Respondent be ordered to release petitioner within sixty days unless, within that period of time, proceedings are initiated in the California Superior Court for a retrial; and

        4. This case be closed.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 14, 2010.


_____
U.S. MAGISTRATE JUDGE

1/jk/ar
savi0335.157(d)